**Audrey Eldon BAGLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–85–044–CR.**

Court of Appeals of Texas, Beaumont.

April 23, 1986.

Paul Buchanan, Beaumont, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

BURGESS, Justice.

Audrey Eldon Bagley plead guilty to a jury of the offense of Aggravated Rape. The jury assessed his punishment at 50 years confinement in the Texas Department of Corrections. Mr. Bagley was represented at the trial by qualified, competent counsel. He is represented on appeal by one of those trial counsel. Mr. Bagley has filed with this court a pro se "brief". There is no right to hybrid representation. The pro se brief presents nothing for review. *Rudd v. State,* 616 S.W.2d 623 (Tex. Crim.App.1981). We will consider the six grounds of error alleged in counsel's brief.

The first ground of error complains the trial court erred in allowing the introduction of extraneous offenses. This com-

plaint is multi-faceted. First, the state introduced into evidence both oral and documentary evidence that the appellant failed to appear for trial, a bond forfeiture had been entered against him, and his subsequent re-arrest. Appellant agrees that evidence of flight is admissible on the issue of guilt. *Rumbaugh v. State*, 629 S.W.2d 747 (Tex.Crim.App.1982). However, appellant argues that since a plea of guilty had been entered, there was no issue of guilt and the evidence of flight should not have been admitted. It has been stated many times that the state's right to introduce evidence is not restricted by the entry of a plea of guilty by the defendant, or by his admissions of facts sought to be proved; relevant facts admissible under a plea of not guilty are also admissible under a plea of guilty. *Hoffert v. State*, 623 S.W.2d 141 (Tex.Crim.App.1981). Here the defendant had applied for probation, it is both material and relevant for the jury to know the circumstances of the individual regarding his lack of appearance before the trial court and his subsequent arrest.

The next complaint involves the following portion of the record:

"[STATE'S ATTORNEY]: Now, the basic requirement of a person seeking psychiatric treatment is a willingness to admit there is a problem and a willingness to work that problem out; is that correct?

"[WITNESS]: It depends on what kind of problem it is.

"[STATE'S ATTORNEY]: Well, Mr. Bagley's problem. Is that important to have his cooperation?

"[WITNESS]: Yes.

"[STATE'S ATTORNEY]: Would it affect your opinion on whether or not Mr. Bagley has that willingness that's necessary to get effective treatment if you were aware of whether or not he had been planning a jail break from the Jefferson County Jail?

"[DEFENSE COUNSEL C]: Your Honor, we would object. That's an extraneous matter. It's not relevant or germane to any issue before the jury.

"THE COURT: Overruled.

"[STATE'S ATTORNEY]: If Mr. Bagley had written in a letter, 'I think we could pull a jail break here in Beaumont if we played our cards right,' and then went on to explain the security procedures at the jail and how they could be circumvented and this letter is dated January 14, 1985, would that show that he was unwilling to cooperate and correct his problems?

"[WITNESS]: I'm not sure what that means. I haven't discussed it with him. I don't know whether that's more of the cry for help business that he's done many times before.

"[STATE'S ATTORNEY]: If in the same letter he states, 'If we didn't waste anybody they wouldn't look for us very long, but if we have to—

"[DEFENSE COUNSEL C]: Your Honor, could we just have a running objection to the matters that he's going into as far as extraneous matters?

"THE COURT: Yes, sir.

"[STATE'S ATTORNEY]: If he expressed in a letter a willingness to kill the guards who were in charge of watching him to make his escape, would that show he's unwilling to work with society and in effect cure himself?

"[WITNESS]: I don't know that I would interpret it that way or certainly that's not the only interpretation that can be placed on it.

"[STATE'S ATTORNEY]: Is it consistent with that interpretation, however? Could it be consistent with that interpretation?

"[WITNESS]: Yes."

Then on further recross-examination we find the following:

"[WITNESS]: I'm not sure what you're asking.

"[STATE'S ATTORNEY]: If the letter had been addressed to a person who was at the time an absconder from the Federal jurisdiction—that is, there was an active warrant out for him and they were hunting for him and didn't know his

whereabouts—would that be more consistent with an actual escape plan that was serious?

"[WITNESS]: I don't know. I mean, the whole think sounds pretty swashbuckling to me more in keeping with the histrionic personality in a dramatic statement than—

"[STATE'S ATTORNEY]: Are you aware of the facts surrounding Mr. Bagley's trip to Mexico?

"[WITNESS]: Somewhat.

"[STATE'S ATTORNEY]: Are you aware of whether or not Mr. Bagley—

"[DEFENSE COUNSEL C]: Your Honor, we do object to it being an extraneous matter, and could we just have a running objection to aviod [sic] interruptions?

"THE COURT: Yes, sir.

"[DEFENSE COUNSEL C]: I assume the Court overrules our objection?

"THE COURT: That's right.

"[STATE'S ATTORNEY]: In making this opinion of yours of this swashbuckling activity, are you aware prior to his trip to Mexico that Mr. Bagley applied for a false passport?

"[DEFENSE COUNSEL C]: Your Honor, again, we would object. He's getting into another extraneous matter.

"THE COURT: Overruled, but your objection of onrunning is on.

"[STATE'S ATTORNEY]: Were you aware of that, Doctor?

"[WITNESS]: Yes, that's my understanding.

"[STATE'S ATTORNEY]: Do you consider the application for false passport a swashbuckling activity or is that consistent with a man who is making plans to leave the custody of the United States and, in fact, did leave the custody of the United States and flee to Mexico?

"[WITNESS]: If you look at the totality of the plan instead of just that one little feature, I think you can look at it as an extremely ill-conceived, poorly planned, doomed to failure mess.

"[STATE'S ATTORNEY]: Now, isn't it true, Doctor, that Mr. Bagley stayed at large for quite some time and was only located through the efforts of the Federal Bureau of Investigation?

"[WITNESS]: They found him in Mexico on antipsychotic medication, on other kinds of medications and treatments.

"[STATE'S ATTORNEY]: That wasn't my question, Doctor. My question was: Wasn't he found only because of the efforts of the Federal Bureau of Investigation?

"[WITNESS]: I think he was found also because of his gross ineptitude in doing this because of his illness.

"[STATE'S ATTORNEY]: What you're saying is Mr. Bagley is not a good escape artist but he he did manage to get way and you feel that because he's not a good escape artist—

"[DEFENSE COUNSEL B]: Your Honor, I want, to object. There is absolutely no evidence whatsoever from any source nor does it exist that there was any escape in this trip to Mexico.

"THE COURT: Sustained.

"[DEFENSE COUNSEL B]: I ask the jury to be instructed to disregard that reference to an escape.

"THE COURT: So instructed.

"[DEFENSE COUNSEL B]: And I ask for a mistrial further based on the objection of a fake extraneous offense, one that does not exist at all.

"THE COURT: That's denied. I'll instruct the jury to disregard that comment.

"[DEFENSE COUNSEL B]: Thank you, Your Honor."

Appellant alleges there was injected into the trial the additional extraneous offense of attempted jail-break, applying for a false passport and escape. The state, unfortunately, does not respond to any of these particular complaints.

▬▬ The witness being cross-examined was a psychiatrist offered by the defense to show the nature of the appellant's men-

tal condition. It is obvious the defense was also trying to show the jury that probation was a better alternative for appellant than confinement in the penitentiary. While the questions concerning the attempted jail break might have been proper under a limiting tender or with a limiting instruction, they were not proper in the context shown. The question concerning the application for a false passport was in connection with the purported flight and thus not error. The court sustained the objection as to the remark about being an escape artist and instructed the jury to disregard. This was sufficient to cure any error. *Thompson v. State,* 612 S.W.2d 925 (Tex.Crim.App.1981). As to all the extraneous offenses, some were admissible, some not. In view of the evidence before the jury concerning the severity of the offense and the psychiatric testimony presented by the defense, there is not a reasonable possibility that the erroneously admitted evidence contributed to the punishment assessed. It is, therefore, harmless error, beyond a reasonable doubt. Ground of error number one is overruled.

■ Ground of error number two alleges the state committed reversible error during final argument. The complained of argument is:

"[STATE'S ATTORNEY]: We want to talk about reputation witnesses. Mr. [DEFENSE COUNSEL C] said, and very truthfully, that reputation witnesses testify from hearsay. They're not allowed to testify from personal knowledge. I can't ask Mr. Trahan or Mrs. Price or Ms. Eaves or Fay Woodsmall, 'Why do you think this guy has a bad reputation?'

"[DEFENSE COUNSEL B]: Your Honor, I want to object. He's now interjecting or attempting to interject extraneous matters into this and trying to show that he was held back by some evidentiary ruling on your part and we would ask, that—we object to that as injecting extraneous matters.

"THE COURT: Objection sustained.

"[DEFENSE COUNSEL B]: And we ask that the jury be instructed to disregard that.

"THE COURT: The jury will be so instructed."

The remarks of the prosecutor did not necessarily imply there were other offenses the jury was not able to know about. The careful trial judge did instruct the jury to disregard the comment and this was sufficient to cure any error. *Thompson, supra.* Ground of error number two is overruled.

■ The next ground of error complains of the following portion of the state's closing argument:

"[STATE'S ATTORNEY]: ... Now, you can't base your decision on what other people think, but you are aware that deterrence is a valid law enforcement plea, that we're entitled to consider what affect this case will have on both the defendant's behavior in the future—Will it deter him? And if he is the manipulating person I've described it's not going to have any affect on him if you give him probation—and what affect it will have on other people in the community who might be considering this type of crime. Remember again, under the evidence we have before us, Mr. Bagley was in control of his faculties, was responsible for his acts, and understood right from wrong. Other people in the communities have the same urges that he had who know it's wrong and that they realize that, 'Hey, if I can show them I've got some emotional problems, then I ain't going to get punished. I'm going to get probation.'

"[DEFENSE COUNSEL B]: Your Honor, I'm going to object to him telling the jury that getting probation is equivalent to no punishment. That's a misstatement of the law.

"THE COURT: Overruled.

"[STATE'S ATTORNEY]: What affect are you going to have on those people? Oh, yes, granted probation may be considered punishment by some...."

Placed in context, this argument was no manifestly improper, violative of any statute, nor did it inject any new and harmful fact into the case. *Mathews v. State,* 635

S.W.2d 532 (Tex.Crim.App.1982). This ground of error is overruled.

 Ground of error number four is predicated on the fact that the trial court's bailiff was called as a witness and testified to appellant's failure to appear for trial. Defense counsel then objected to the witness continuing to serve as a bailiff. The trial court sustained the objection in part by directing the bailiff to not have any contact with the jury. The trial court, however, allowed the bailiff to perform his other normal responsibilities.

*Ex Parte Halford*, 536 S.W.2d 230 (Tex. Crim.App.1976), is a case where a sheriff functioned as a bailiff in attendance of the jury and was a key witness for the prosecution. Our highest criminal court reversed the conviction. *Allen v. State*, 536 S.W.2d 364 (Tex.Crim.App.1976), is more akin to the instant case. In *Allen*, a sheriff was permitted to testify even though he had been sua sponte excused from the rule and allowed to remain in the courtroom because the trial court "desired" the sheriff in the courtroom. The court found no abuse of discretion and no error. While we must observe that the practice is certainly not advisable, we also find no error in this case. Ground of error number four is overruled.

Ground of error number five alleges the trial court erred in not conducting a "Jackson v. Denno" hearing upon the issue of voluntariness of any statement made by appellant. Appellant cites *McNeill v. State*, 650 S.W.2d 405 (Tex. Crim.App.1983), for the proposition that a hearing was necessitated simply by appellant requesting it. This case is distinguishable. Appellant plead guilty. A plea of guilty to a jury waives all nonjurisdictional defects, including claimed deprivations of federal constitutional due process and state due process of law. *Wheeler v. State*, 628 S.W.2d 800 (Tex.Crim.App.1982). Further, if a motion to suppress had been filed and denied, the guilty plea would have waived any error of the court in its denial. *Shallhorn v. State*, 671 S.W.2d 730 (Tex.App.—

Fort Worth 1984, pet. granted). This ground of error is overruled.

Appellant's final ground of error alleges:

"The trial court erred in procuring appellant's attendance at trial in violation of Article 51.14, Article IV(a)(d)."

Appellant's counsel admits the record is silent on this matter. Allegations made in a brief which are unsupported by the record will not be accepted as a fact by the appeals court. *Beck v. State*, 573 S.W.2d 786 (Tex.Crim.App.1978). Nothing is preserved for review. This ground of error is overruled. The judgment of the trial court is affirmed.

AFFIRMED.