**Brenda Lee WHITMIRE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–88–271 CR.**

Court of Appeals of Texas, Beaumont.

April 25, 1990.

4. Church maintenance costs, 1980–84.

Ray Epps, Houston, for appellant.

Michael Little, Dist. Atty., Steve Greene, Asst. Dist. Atty., Liberty, for the state.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction of murder after a trial before a jury. The punishment was assessed by the jury at 25 years in the Texas Department of Corrections. Appellant raises five points on appeal. They are addressed in the order they appear in appellant's brief.

Point of error one complains that the trial court committed error by admitting the oral confession of the appellant. Before considering this point, a brief rendition of the facts are needed. On March 29, 1987, Liberty County sheriff's deputies responded to a "disturbance with a shot fired" call at the home of the appellant. Upon arriving at the house, deputies found the front door open. Deputies called out into the house, but they received no response. They entered and found the body of the deceased, Jimmie Whitmire, appellant's husband, laying in his bed. The deceased had been shot in the chest. The gunshot severed the pulmonary artery leading to death within a matter of minutes. Deputy Sandra Vogel, who was not on duty that evening, heard the disturbance call over her police scanner at her residence and drove to the Whitmire residence. Deputy Vogel knew both appellant and Jimmie Whitmire personally from having grown up with them. Deputy Vogel surveyed the crime scene, and then went several houses up the street to the home of appellant's mother and father. Appellant was there in one of the bedrooms being comforted by her mother. Deputy Vogel noticed that appellant was upset, and she also tried to comfort appellant. Moments later, Deputy Jimmy Belt arrived and informed appellant's parents that appellant's husband was dead, and they requested that he inform appellant of that fact. Deputy Belt then went into the bedroom where appellant was located, along with Deputy Vogel. Deputy Belt first advised appellant of her "Miranda" rights, and then told appellant that her husband "had not made it." At that point, appellant stood up and placed her arms around her father and said, "Daddy, I killed him." (Deputy Belt testified that appellant said, "I shot him, Daddy.") At that point, an ambulance was called for appellant as she appeared to be in "shock." Appellant was not arrested, but was taken to the hospital by the ambulance. A forty-five caliber pistol was recovered at the residence of appellant's parents. The pistol was pointed out to Deputy Tom Chapman, who took it for evidence. Ballistics tests later showed that the pistol was the weapon used to shoot the deceased.

With this bit of factual background in mind, we now take up the issue of the admissibility of appellant's statement. We turn first for guidance to TEX. CODE CRIM.P.ANN., arts. 38.21 and 38.22 (Vernon Supp.1989). Article 38.21 states:

A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed.

Appellant relies on art. 38.22, sec. 3(a) which requires oral statements of an accused made as a result of "custodial interrogation" to be electronically recorded before being admissible. Section 3(a) sets out five requirements as to the electronic recording, none of which were satisfied in this case. Along with sec. 3(a), appellant relies on case law which recites, "As a general rule, oral confessions are not admissible." *Briddle v. State*, 742 S.W.2d 379 (Tex.Crim.App.1987), *cert. denied,* — U.S. ——, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988). The *Briddle* case, however, is distinguishable in that the issue there dealt with sec. 3(c) of art. 38.22 which deals with statements by an accused which are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument of the crime. Of greater importance to this Court is sec. 5 of art. 38.22 which states:

> Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury, or at an examining trial in compliance with Articles 16.03 and 16.04 of this code, *or of a statement that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness,* or of any other statement that may be admissible under law. (emphasis ours).

We feel that appellant's focus on sec. 3(a) of art. 38.22 is misplaced, and that sec. 5 is the controlling section of art. 38.22 to be applied to the facts presented to us in the record of this case. Based on said facts, we feel compelled to focus in on one portion of sec. 5; that being the admissibility of an oral statement if the statement "does not stem from custodial interrogation."

A case most impressive in its treatment of this issue is *Shiflet v. State,* 732 S.W.2d 622 (Tex.Crim.App.1985). *Shiflet* is a virtual treatise on the concept of "custody" for oral statement purposes. Judge Teague, writing for the majority, masterfully pares down the issue of the case to be: "If we find that at the time appellant made his oral admission to the officers he was not in custody, and also find that his oral admission was given freely, voluntarily and without compulsion or persuasion, then we will hold that it was admissible, and not inadmissible, evidence." We will adopt the above language as the issue for us to decide in the case sub judice on appellant's point of error number one. The first sub-issue to consider is whether appellant's statement was the product of custodial interrogation. We find that the record discloses ample evidence to support the conclusion that appellant's oral statement was voluntarily made before reaching its accusatory phase, and during a time when the appellant was not in custody. The appellant was found at her parent's home in a very emotional state. At the time Deputy Belt arrived at the parent's home, very little, if any, suspicion was centered on appellant. Appellant, being the next of kin of the deceased, had the right to be informed of her husband's death. It borders closely on the incredible to suggest that Deputy Belt's statement to appellant informing her of her husband's death could be taken as "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect" as appellant would have us believe in citing *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), in her brief. Therefore, neither actual nor what might be termed "constructive" interrogation had taken place prior to appellant making her oral statement.

The question of "custody" is also answered by examining the facts. Despite reading appellant her "Miranda" warnings, the deputies were unequivocal in their opinion that at no time was appellant in custody on the evening of March 29, 1987. The

shooting had not taken place in their presence, nor were there any other witnesses to the shooting. The physical condition of the appellant initially raised the possibility of self-defense. There were no deputies riding in the ambulance with appellant as she was transported to the hospital from her parents house the night of the murder. There is no evidence that appellant considered herself to be in custody that evening either. These facts taken together lead us to the rather inescapable conclusion that appellant was not in "custody" when she made the oral statement complained of. As Judge Teague noted in *Shiflet* with regard to "custodial interrogation" issues:

> Notwithstanding the fact that it has been almost twenty years since *Miranda v. Arizona,* supra, was decided, the question still perplexes courts which seek to lay down consistent, coherent body of rules that the police can predictably work under in performing their job. But, no court has yet to formulate a rule or rules that are workable in all given situations. Therefore, such determination must be made on an ad hoc basis.

*Shiflet* at 629.

As the facts and circumstances in *Shiflet* centered much more heavily on the accused as *the* suspect in the murder than they do in the case sub judice, we feel confident that our "ad hoc" determination on the "custodial interrogation" issue, and the resultant admissibility issue, are well grounded in law. As such, appellant's point of error one is overruled.

■ Point of error two states that the trial court erred in failing to grant a mistrial as a result of the trial court's comment on the evidence. In order to decide if error occurred or not, the comment needs to be placed in its proper context. The exact comment was, "If I made a mistake on letting McDonald testify, I am going to make another one and let him. I believe he knows as much about the body as McDonald does about ham." The context in which this comment was made is as follows. The State had initially offered the testimony of Dr. Donald Shepherd, the pathologist who conducted the autopsy on the victim's body. Dr. Shepherd testified that, among other findings, it was his opinion that the victim was laying in bed when he was shot. Later, during presentation of the defense, appellant offered the testimony of Floyd McDonald, a firearms expert, with regard to McDonald's test of a weapon similar to the murder weapon upon a ham for the purpose of rebutting Dr. Shepherd's testimony as to the victim's position in the bed at the time of the shooting. McDonald's testimony compared a three and one-half inch thick ham favorably to the chest and back area of a human body insofar as the relative resistance each would give a bullet. The State objected to the validity and admissibility of this evidence both in the presence of the jury, and during a hearing held outside the jury's presence. McDonald's testimony was allowed to stand. To rebut this testimony, the State recalled Dr. Shepherd to testify to the validity of McDonald's experiment with the ham. At this point the following exchange occurred between opposing counsel and the trial court in the presence of the jury:

Mr. Zbranek: Your Honor, the witness isn't qualified as a ballistics expert. He is a qualified pathologist but not shown to be a ballistics man.

Mr. Greene: Judge, we were talking about thickness and density and so forth earlier with Mr. McDonald, and this witness being a physician, being a trained forensic pathologist, is familiar with the human body. And I think his testimony is more justified.

Mr. Zbranek: The question was asked about the path as compared to resistance to a bullet. That was the question. No question about the doctor's qualification as a pathologist. But the question was directed to the density as they would form a resistance to a projectile, namely a bullet. The doctor is not yet qualified to be a ballistics expert to express an opinion on that. He might can but he hasn't yet.

The Court: If I made a mistake on letting McDonald testify I am going to make another one and let him. I believe

he knows as much about the body as McDonald does about ham.

Mr. Zbranek: I object to the comment on the weight of the evidence and move for a mistrial.

The Court: Objection is overruled.

In her brief, appellant relies on art. 38.05 of the TEX. CODE OF CRIM.P. which prohibits a judge from discussing or commenting upon the weight of evidence when ruling on its admissibility. Appellant also cites *Davis v. State*, 651 S.W.2d 787 (Tex. Crim.App.1983); and *Marks v. State*, 617 S.W.2d 250 (Tex.Crim.App.1981) for the legal proposition that in order for reversible error to occur from a violation of art. 38.05, the judge's comment must be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights. Putting the trial court's comment in the context of all the testimony and various objections and subsequent trial court rulings occurring in the jury's presence, we cannot see how the comment complained of by appellant either prejudiced her or benefitted the State. The comment did not call into question the credibility or veracity of Dr. Shepherd or Floyd McDonald, nor was the trial court exclaiming that because he had made a mistake before in letting McDonald testify as to the ham test, he was going to cure it by making another mistake in allowing Dr. Shepherd to rebut the ham test. A reasonable interpretation of the comment was that the trial court, in fairness to both parties, was going to allow Dr. Shepherd testify as to his opinion of the ham test as Dr. Shepherd knew as much about the physiology of the human body as Floyd McDonald knew about the physiology of ham. We find, therefore, no error in overruling appellant's motion for mistrial. Point of error two is overruled.

■ Point of error three complains that there was insufficient evidence to support a conviction for murder. We note at the outset that appellant fails to reference us to any part of the record to support this point of error. We realize that a complaint of "insufficiency" could possibly encompass the concept of "nonexistence," but we feel certain that the prosecution presented some evidence tying the appellant in with the murder. The appellant, however, provides us with no points of reference with which to start our search for sufficiency. Appellant does not even list a particular element of the offense of murder that the State failed to prove beyond a reasonable doubt. We feel that appellant has failed to comply with TEX.R.APP.P., Rule 74(f). Nevertheless, we will address this point of error.

We agree with appellant's citing of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234 (Tex.Crim.App.1989); as well as with a case we have cited many times in the past, *Moreno v. State*, 755 S.W.2d 866 (Tex.Crim.App.1988), for the standard for reviewing sufficiency of the evidence questions. This standard requires us to view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. We now look at what evidence was presented to the jury in the light most favorable to the verdict of "guilty."

The most glaring piece of evidence introduced was the appellant's own voluntary statement to the effect that she had shot the victim. The damage done to the appellant by admitting the statement into evidence was, no doubt, considerable. The State also presented evidence that the forty-five caliber semi-automatic handgun appellant's father pointed out to Deputy Chapman was subsequently tested and proven to be the murder weapon. The State also called several witnesses whose testimony reflected their knowledge of appellant's desire and attempts to kill the victim over a period of almost two years. One of the State's witnesses, Michael George, who was appellant's former supervisor at her place of employment, testified that on three occasions appellant told him of her plans to kill the victim while he was asleep, the last occasion being the day before the victim was killed. Appellant told George that she was going to stuff the victim's food with cold remedies and that this, combined with the victim's propensity

for excessive drinking, would make the victim drowsy, and when the victim went to sleep, appellant would shoot him. This portion of Michael George's testimony was corroborated by testimony from the pathologist that, at the time of his death, the victim had such a high level of codeine and alcohol in his body that he was most likely asleep when he was shot. Prior to this testimony, the pathologist had already testified that based on his autopsy and the evidence at the crime scene, it was his opinion that the victim was laying on the bed at the time he was shot, and that the weapon was only two to four feet from the victim's body when he was shot. As for the issue of self-defense, several sheriff's deputies who initially arrived at the scene of the shooting testified that there was no evidence that a struggle had taken place in the house, nor was any blood found in any part of the house other than on the bed and floor where the victim was laying. Furthermore, the victim's body was found laying on a waterbed clad only in briefs. The bedroom was dark and the bedroom door was slightly ajar. The jury was properly charged on both murder and voluntary manslaughter. The charge also contained the law on the use of deadly force under circumstances of self-defense. Nevertheless, the jury returned a verdict of guilty on the murder charge. We find there was ample evidence presented to the jury to allow them to find all of the essential elements of murder beyond a reasonable doubt, as well as ample evidence to reject the appellant's claim of self-defense. Point of error three is overruled.

■ Point of error four complains that the trial court erred in admitting hearsay testimony over appellant's objection. The specific bit of "hearsay" that appellant complains of concerns a statement made by the victim to one of the State's witnesses, Emma Baucher, the victim's ex-wife. The complained of response from Mrs. Baucher was, "He told me that he had gotten himself into a predicament that he couldn't get out of." The record reflects that the State was attempting to rebut earlier testimony elicited by appellant from another witness that the victim had threatened to kill appel-

lant if she attempted to leave him. Mrs. Baucher's testimony as to her conversation with the victim was an attempt to portray *the victim* as wanting out of the marriage to appellant thereby showing that appellant had the opportunity to leave the marriage whenever she wanted to, and that appellant was not terrorized into staying married to the victim against her will. Appellant argues that the victim's statement to Mrs. Baucher was clearly hearsay in violation of TEX.R.CRIM.EVID. 801(d) which defines the term "hearsay" as, " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The State's response is that the victim's statement was offered for the limited purpose to show the victim's state of mind in response to the previous testimony that alleged that the victim would kill appellant if she left him. The State cites TEX.R.CRIM.EVID. 803(3) which states:

(3) **Then Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

We find the Rule 803(3) exception controlling here. In permitting Mrs. Baucher to relate what the victim had told her regarding the state of the marriage between the victim and appellant, the trial court recognized the limited purpose for which the statement was offered. It was clearly offered not to prove that the victim was in some sort of predicament from which he could not escape, it was offered to show the victim's state of mind that *he*, not the appellant, was the trapped partner in the marriage. The State correctly cites our case, *Mathes v. State*, 765 S.W.2d 853 (Tex. App.—Beaumont 1989, writ ref'd), where a murder victim's state of mind declaration was properly admitted before the jury.

Even if the statement did not fall within the Rule 803(3) exception to the general rule on hearsay, we feel that any error committed was harmless. The matter which the statement dealt with was collateral to the issue of guilt or innocence of the appellant for murder; that being the desperate situation appellant supposedly felt herself to be in with the alleged threats to her life from the victim if appellant left the marriage. The evidence of this situation appears to us to be relevant only as to mitigation of punishment. Nevertheless, the trial court permitted the appellant to develop the issue, over an objection by the State, when the "hearsay" statement by the victim regarding the threat to kill appellant if she left was testified to before the jury. Evidently, the trial court felt it was only fair to permit the State to rebut this alleged statement with the testimony of Mrs. Baucher. There was no error in the admission of the statement through Mrs. Baucher. Point of error four is overruled.

■ Appellant's final point of error complains that the trial court erred in excluding the testimony of the appellant's witness, Dr. Gustav Schmiege, as it was relevant to appellant's case. The excluded testimony of Dr. Schmiege concerned appellant's alleged amnesia and medical history. Appellant relies on TEX. PENAL CODE ANN., sec. 19.06 (Vernon 1989), which states:

> In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

In her brief, appellant does not direct us to what is meant by "medical history" evidence that was relevant and should have been admitted. Since the first time Dr. Schmiege saw appellant was on March 30, 1987, the day *after* the shooting, it was proper to exclude all evidence appellant *told* him having to do with her state of mind as it existed either before or after the shooting. Any self-serving "facts" provided by appellant to Dr. Schmiege would be hearsay and also inadmissible. We rely on *Jackson v. State*, 548 S.W.2d 685 (Tex. Crim.App.1977); and *Winegarner v. State*, 505 S.W.2d 303 (Tex.Crim.App.1974), *overruled on other grounds*, for the proposition that it is not error to refuse to permit a psychiatrist to give his opinion based upon hearsay as to the intent of appellant at the time of the offense. *Winegarner* quotes McCormick and Ray, *Texas Law of Evidence*, sec. 1428 as stating:

> In general, our courts permit a witness to testify as to his own intention or other state of mind where the same is material.... On the other hand decisions purporting to apply the opinion rule, uniformly exclude the testimony of a witness as to another person's state of mind. It is said that since one person cannot possibly know another's state of mind, his testimony is necessarily based on conjecture.

Appellant testified in her own behalf as well as did Dr. Paul Redman, a physician who had treated appellant on several occasions prior to the day of the shooting as well as on the day of the shooting. Appellant testified to her physical and mental condition both before and after the day of the shooting. Dr. Redman testified as to appellant's physical history and what he treated her for the evening of the shooting when she was first brought to the hospital. We, therefore, find no error in the trial court refusing to permit Dr. Schmiege to testify as to either "medical history," or appellant's alleged amnesia. Point of error five is overruled. Having found no reversible error committed, we affirm the judgment of the trial court.

AFFIRMED.