**Cherie Field VANN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13-91-457-CR.**

Court of Appeals of Texas, Corpus Christi.

May 11, 1993.

Dissenting Opinion of Chief Justice Nye March 26, 1993.

Ronald N. Hayes, Karen Zellars, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Linda A. West, Craig Goodhart, Asst. Dist. Attys., Houston, Robert Huttash, State Pros. Atty., Matthew W. Paul, Asst. State Pros. Atty., Austin, for appellee.

Before NYE, C.J., and FEDERICO G. HINOJOSA, Jr. and GILBERTO HINOJOSA, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

On State's petition for discretionary review and under the provisions of TEX. R.APP.P. 101, we reconsider and modify our opinion of March 26, 1993, and substitute the following as the opinion of this court.

A jury found appellant, who was indicted for murder, guilty of the lesser included offense of voluntary manslaughter, found that she used a deadly weapon, and assessed punishment at ten years' confinement and a $10,000 fine. Appellant raises eight points of error, complaining of the sufficiency of the evidence, charge error, and errors in admitting evidence and excluding other evidence. We reverse the judgment of the trial court and remand the case for a new trial.

This case arises from a domestic shooting. Appellant, Cherie Vann, and the victim, Mark Vann, were married in January 1981. Shortly after midnight on May 17, 1990, police officers were dispatched to the Vanns' home. Upon arriving at the home, the officers found paramedics, the hysterical and bloody appellant, and the body of Mark Vann. Mark Vann died from a single gunshot wound which perforated his left lung and pulmonary artery. At trial, appellant admitted shooting Mark Vann, but contended that she suffered from battered wife syndrome and that she shot him while fearing for her life. The parties contested the issues of self-defense and provocation throughout the trial. The trial court instructed the jury on murder, voluntary manslaughter, and involuntary manslaughter. The jury found appellant guilty of voluntary manslaughter.

By her first point of error, appellant challenges the sufficiency of the evidence supporting her conviction for voluntary manslaughter. She argues that a rational jury could not conclude from the evidence that she shot her husband under the influence of sudden passion and that a rational jury could only conclude that she acted in self-defense. The State contends that appellant failed to object to the voluntary manslaughter charge and is estopped from raising sufficiency points on appeal, citing *State v. Lee*, 818 S.W.2d 778 (Tex.Crim. App.1991), and *Bradley v. State*, 688 S.W.2d 847 (Tex.Crim.App.1985).

In *Lee*, the Court of Criminal Appeals reversed the judgment of the Second Court

of Appeals and reinstated the trial court's judgment and sentence. The defendant, indicted for murder, requested a jury charge of voluntary manslaughter, and the jury found him guilty of voluntary manslaughter. He appealed, and the Second Court of Appeals reversed and ordered him acquitted on the grounds that the State failed to produce any evidence that he killed the victim while under the influence of sudden passion arising from adequate cause. *Lee v. State,* 792 S.W.2d 590, 593 (Tex.App.—Fort Worth 1990), *rev'd,* 818 S.W.2d 778 (Tex.Crim.App.1991). The State's petition for discretionary review was granted on two grounds: 1) whether a party who requests a jury charge may claim insufficient evidence to support the granted charge, and 2) whether voluntary manslaughter is a lesser included offense of murder. Judge Overstreet, writing for a three-judge plurality, held that requesting a lesser included offense charge or failing to object to its inclusion estops a defendant from raising a sufficiency challenge on appeal. *Lee,* 818 S.W.2d at 778–81 (plurality opinion). The plurality also held that voluntary manslaughter is not a lesser included offense of murder unless there is evidence that the defendant killed while under the influence of sudden passion. *Id.* at 782. Judge Miller concurred, adhering to his concurring opinion in *Bradley,* and four other judges concurred in the result without expressing opinions on any of the issues.

In *Bradley,* the appellant, indicted for murder and convicted of voluntary manslaughter, claimed the trial court erred by instructing the jury on voluntary manslaughter over his timely objection that the evidence did not raise it. *Bradley,* 688 S.W.2d at 849 (plurality opinion). The Court of Criminal Appeals reversed, finding no evidence to raise the sudden passion issue. Judge Clinton, writing for a three-judge plurality stated:

> We hasten to add that this disposition of the case hinges on the fact that appellant vociferously objected to the inclusion of the voluntary manslaughter charge. Failure to object to the charge when given on the ground that the evidence does not support it would signal acquiescence on the part of the accused in the trial court's judgment that sudden passion was raised.
>
> By invoking the benefit of the lesser included offense charge at trial in not objecting to its submission to the jury [footnote omitted], an accused will be estopped from then complaining on appeal that the evidence failed to establish all the elements of the offense.

*Id.* at 853 (plurality opinion). Three judges concurred in the result, two judges dissented, and Judge Miller concurred and noted that he also joined the plurality opinion. *Id.* at 853.

In the instant case, appellant comes to this Court in a posture between *Lee* and *Bradley.* Unlike Mr. Lee, appellant did not request the voluntary manslaughter charge, but unlike Mr. Bradley, appellant did not object to its inclusion. While we appreciate a concern that defendants might lie behind the log to achieve acquittal on appeal, we do not find the State's authority persuasive or controlling on the facts of this case.

The distinction between murder and voluntary manslaughter and the State's burden of proof under each offense is the subject of continuing legal exegesis. *See, e.g., Johnson v. State,* 815 S.W.2d 707, 710 n. 3 (Tex.Crim.App.1991); *Bradley,* 688 S.W.2d at 853 n. 13. Since the courts construe the offense of murder to contain an implied element of "the absence of sudden passion," the State is placed "in the ludicrous position of having to prove a negative" when it seeks to prove a defendant committed murder. *Johnson,* 815 S.W.2d at 710. On the other hand, as an affirmative element of voluntary manslaughter, the sudden passion issue threatens to place reviewing courts in the "ludicrous position of acquitting a defendant of voluntary manslaughter when there is sufficient evidence in the record that he is guilty of murder." *Bradley,* 688 S.W.2d at 853 n. 13.

In *Johnson,* 815 S.W.2d at 710 n. 3, a majority of the Court of Criminal Appeals stated:

Manslaughter could qualify as a lesser included offense of murder under Section (3) of Article 37.09 V.A.C.C.P., which permits an offense to be charged as a lesser included offense if "it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission."

However, the plurality in *Lee*, 818 S.W.2d at 782, retreated from that language and stated:

Intent or knowledge influenced by sudden passion is not included amongst the culpable mental states in § 6.02. Until the Texas Legislature includes such, we cannot conclude that intent or knowledge accompanied by sudden passion exists as a mental state of a lesser degree of culpability than intentional or knowing. We therefore adhere to our prior holdings that unless there is some evidence of sudden passion in the case, voluntary manslaughter cannot be considered a lesser included offense of murder. (Citations omitted.)

 As shown above, the Court of Criminal Appeals continually states a concern that courts should not construe the law to allow murder defendants to raise the sudden passion issue to gain a voluntary manslaughter conviction, thereby avoiding a murder conviction, and subsequently to gain an acquittal on appeal by arguing insufficient evidence of sudden passion. We note that this concern only attaches to the sudden passion issue. We find no rational reason to consider a failure to object to a jury charge of voluntary manslaughter as precluding one from challenging the sufficiency of the evidence supporting the other elements of murder. We are also mindful that a majority of the Court of Criminal Appeals has not yet ruled that a defendant who merely fails to object to a lesser included offense charge is estopped from challenging the sufficiency of the evidence supporting a conviction for the lesser included offense. Consequently, we have decided to address appellant's point on the merits.

 When we review the sufficiency of the evidence in a criminal case, we view all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App. 1989); *Prophet v. State*, 815 S.W.2d 836, 837 (Tex.App.—Corpus Christi 1991, no pet.). We also apply this standard to cases involving circumstantial evidence. *Earhart v. State*, 823 S.W.2d 607, 616 (Tex. Crim.App.1991); *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Crim.App.1983) (opinion on rehearing). The jury is the sole judge of the credibility of a witness and may believe or disbelieve all or any part of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

 A person commits voluntary manslaughter if she causes the death of an individual under circumstances that would constitute murder under § 19.02 of the Penal Code, except that she caused the death under the immediate influence of sudden passion arising from an adequate cause. *Johnson*, 815 S.W.2d at 709; TEX.PENAL CODE ANN. § 19.04(a) (Vernon 1989). A person commits murder if she intentionally or knowingly causes the death of an individual or if she intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX.PENAL CODE ANN. § 19.02(a)(1, 2) (Vernon 1989).

The evidence, viewed in the light most favorable to the State, shows that the victim had grabbed or shoved appellant only four times during their ten-year marriage, never seriously injuring her, and never threatened her with weapons. The victim moved to Houston in January 1990, three months before appellant joined him. After arriving in Houston, appellant obtained a handgun and learned how to use it from a friend who worked with the Houston Police Department. Sometime after appellant joined the victim in Houston, the victim expressly told her that he did not want to remain married to her. The couple then decided to attend counseling sessions.

The first counseling session took place on May 10, 1990, and the second session took place on May 16, 1990. Appellant told the counselor, Dr. Barth, that she learned the victim had six or seven affairs and that this knowledge caused her pain. That evening, appellant went to a club to listen to a jazz band with a man who had befriended both appellant and the victim. The victim was to join them after a dinner meeting. Appellant drank a margarita and two and one-half glasses of wine between 8:00 p.m. and 11:30 p.m. During the evening, appellant discussed her marital problems with the friend and decided to move into the guest bedroom. The victim never arrived at the club and appellant went home.

Appellant moved some of her belongings from the master bedroom to the guest bedroom. She took the handgun from the master bedroom nightstand and placed it on the largest of the three dog kennels that were in the guest bedroom. She put on her nightgown, prepared a glass of diet ginger ale, set the house alarm, and went to bed.

Approximately fifteen minutes later, the victim returned home intoxicated and entered the guest bedroom where he found appellant. He yelled, "Why weren't you at Cody's?" He then went into the kitchen and poured himself a glass of bourbon. Appellant followed the victim into the kitchen where he verbally abused her, told her that she did not belong there and said that he was sick of her telling him what he could and could not do. The victim pushed appellant aside and walked out of the house. Appellant then poured the contents of the glass and bourbon bottle down the sink.

The victim re-entered the house and went into the kitchen, looking for his drink. Upon learning that appellant had poured the bourbon down the drain, the victim became angrier and threw a glass at her. Appellant retreated to the bedroom, followed by the victim. Appellant sat down on the bed and picked up the telephone to call for help. The victim grabbed the telephone away from her and appellant, while still sitting on the bed, shot him from a distance of two feet.

At trial, appellant testified that she feared for her life at the moment she shot the victim and introduced expert witnesses who testified that she suffered from battered wife's syndrome and post traumatic stress disorder. Appellant argues that the jury could either believe her testimony entirely and find her not guilty by reason of self-defense or disbelieve her entirely and find her guilty of murder. This argument is without merit; the jury may believe part of a witness' testimony and disbelieve other parts. In this case, the jury could believe that the victim provoked appellant physically and emotionally and that the combination of the victim's affairs, verbal abuse, and physical provocation rendered appellant incapable of cool reflection at the moment she killed the victim. The jury could also choose to disbelieve her testimony that she feared for her life at the moment she shot the victim. The jury could also choose to disbelieve the opinion testimony of appellant's expert witnesses that she was incapable of forming the mental state necessary to commit murder. A rational jury could conclude that appellant knowingly and intentionally shot the victim while under the influence of sudden passion. We overrule appellant's first point of error.

By her fifth point of error, appellant complains the trial court erred by admitting hearsay testimony from a rebuttal witness over her timely objection. The State contends the testimony was admissible under the state of mind exception, TEX. R.CRIM.EVID. 803(3).

Hearsay is an out-of-court assertion offered to prove the truth of the matter asserted. TEX.R.CRIM.EVID. 801(d). Hearsay is not admissible except as provided by statute or the Rules of Criminal Evidence. TEX.R.CRIM.EVID. 802. The "Then Existing Mental, Emotional, or Physical Condition" exception, TEX.R.CRIM.EVID. 803(3), allows the admission of

> [a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), *but not including a statement of memory or belief to*

*prove the fact remembered or believed* unless it relates to the execution, revocation, identification, or terms of declarant's will. (Emphasis added).

▇▇ Admitting statements of memory or belief would virtually destroy the hearsay rule by allowing a state of mind, provable by hearsay statements, to serve as the basis for inferring the happening of an event which produced the state of mind. *Gibbs v. State*, 819 S.W.2d 821, 837 (Tex. Crim.App.1991) (citing 33 GOODE, WELLBORN & SHARLOT, TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 803.7 (Texas Practice 1988)). The State may, for example, introduce testimony that a victim stated an intent to go to a certain place, but not that the victim stated he was responding to a telephone call. *Norton v. State*, 771 S.W.2d 160, 165–66 (Tex.App.—Texarkana 1989, pet. ref'd). However, a victim's simple statement that he does not trust a person may be admissible under Rule 803(3). *Newton v. State*, No. 70770, slip op. at 18–19, 1992 WL 175742 (Tex.Crim. App. June 17, 1992). The statute which provides that the State and the defendant "shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased," TEX.PENAL CODE ANN. § 19.06 (Vernon 1989), does not extend the rules of evidence to permit a court to admit hearsay that is otherwise inadmissible. *Werner v. State*, 711 S.W.2d 639, 643–44 (Tex.Crim.App.1986); *Callaway v. State*, 818 S.W.2d 816, 828 (Tex.App.—Amarillo 1991, pet. ref'd).

The State produced a witness, prompting the following exchange:

Prosecutor: When you spoke to [the victim] that night, what was his mood?

Witness: I would characterize it as being depressed and as sad as I ever saw him the entire time I knew Mark.

Prosecutor: Do you know what he was sad about?

Witness: We had a long conversation on various topics, lots of his personal problems. I considered Mark my best friend. He confided in me on several occasions. At one point he did state—

Defense Counsel: Object to anything he stated.

Prosecutor: 80.33 [sic], any existing mental state at that time.

Court: Overruled. They have brought it up. Overrule the objection.

Prosecutor: What was the content and what did you talk about?

Witness: We talked about the pending divorce, that he was not happy in his current marriage and wanted to find a way out and Cherie was visibly upset with him and wouldn't give him the divorce he wanted. He made an added statement to me, he said[, "]I wouldn't be surprised if Cherie was waiting for me at home with a gun and shot me.["]

Appellant complains that the trial court erred by admitting the following statement into evidence: "I wouldn't be surprised if Cherie was waiting for me at home with a gun and shot me." We must first determine whether error is preserved.

To preserve error concerning the admission of evidence a defendant must comply with TEX.R.CRIM.EVID. 103(a)(1) and TEX. R.APP.P. 52.

[T]hese rules state that if, on appeal, a defendant claims the trial judge erred in admitting evidence offered by the State, this error must have been preserved by a proper objection and a ruling on that objection. The objection must be timely; that is, the defense must have objected to the evidence, if possible, before it was actually admitted. If this was not possible, the defense must have objected as soon as the objectionable nature of the evidence became apparent and must have moved to strike the evidence, that is, to have it removed from the body of evidence the jury is allowed to consider. The defense must have stated specifically the basis for the objection unless the particular ground was apparent from the context. The trial judge must have overruled the objection. If the judge refuses to rule on the objection, an objection to this refusal to rule is sufficient to preserve error in the admission of the evi-

dence. When the court, out of the jury's presence, hears and overrules objections to evidence, those objections need not again be made before the jury when the evidence is actually presented to the jury. Error cannot be predicated upon a trial judge's ruling that admits or excludes evidence unless "a substantial right of the party is affected."

*Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App.1991).

■ Appellant objected to "anything he stated," thus clearly indicating that she objected to hearsay testimony. Appellant objected before the testimony she complains of was offered. Her objection was timely, the trial court ruled upon it, and error is preserved for review.

■ The witness testified to the victim's mental condition. The State then asked, "Do you know what [the victim] was sad about?" The defense counsel then objected to "anything he stated," and the State responded with the state of mind exception to the hearsay rule. Tex.R.Crim. Evid. 803(3). The state of mind exception urged by the State does not apply to the question and response from which appellant complains. The State did not ask the witness how he knew the victim's mental condition. Instead, the State attempted to go behind the victim's mental condition to uncover its cause. In other words, the State used the victim's mental condition to produce evidence of events that events occurred or conditions existed which produced the victim's mental condition. This is precisely the sort of hearsay statement that is excluded by Rule 803(3). *See Gibbs,* 819 S.W.2d at 837.

■ We must determine whether the evidence, and not merely the question, was objectionable. Testimony that the victim stated that he was not happy in his marriage and wanted to find a way out was admissible as a statement of emotional state and intent to act. However, the statement that appellant was visibly upset and would not give the victim a divorce is a statement of the victim's memory or belief and is inadmissible hearsay. We now proceed to analyze the statement "I wouldn't be surprised if Cherie was waiting for me at home with a gun and shot me."

We must first determine whether the statement was hearsay, that is, whether it was offered to prove the matter asserted. The statement was not offered to prove the fact that appellant shot the victim. The statement was offered to rebut appellant's defense that she shot the victim in self-defense. The matter asserted was not that appellant would for a certainty shoot the victim at some future date. The hearsay statement asserted only that such an action would not be surprising, implying appellant could have an intent to kill (under undefined circumstances) and her ability to act upon that desire. While *Newton* may allow testimony that a murder victim said "he didn't want to fall asleep while she [the accused] was there because he didn't trust her" in the context of establishing the accused's whereabouts at the time of the murder, a statement that a declarant recognizes a reasonable probability that someone is going to be waiting with a gun to shoot the declarant goes beyond the state of mind and enters the realm of belief. In this instance, the idea communicated and believed is the probability of a future event, which in itself would be objectionable as speculation, even as an in-court declaration. The statement may not be admitted under Rule 803(3), and the trial court erred by admitting the statement over appellant's objection.

■ When we hold that a trial court erred in a criminal trial, we must reverse unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or punishment. Tex. R.App.P. 81(b)(2). To determine whether the error was harmless, we focus on the integrity of the process leading to the conviction rather than on the propriety of the outcome of the trial. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). We examine the error's source and nature, whether the State emphasized it, its collateral implications, how much weight a juror probably would have placed upon it, and whether a finding of harmlessness will encourage the State to repeat the error with

impunity. *Id.* Briefly stated, the question we must answer is whether the error might possibly have prejudiced the jurors' process of deciding the case. *Id.* at 587–88.

The State also contends that any error the trial court committed by admitting the statement was harmless. The State argues that the error could not be harmful as the jury acquitted appellant of murder and found appellant guilty of voluntary manslaughter. We disagree with this assertion.

Appellant defended herself at trial as a battered spouse. The jury had the following choices:

**Murder:** intentionally or knowingly causing the death or intending to cause serious bodily injury and committing an act clearly dangerous that causes the death of a person.

**Voluntary Manslaughter:** causing the death of someone under circumstances constituting murder, but doing so under the immediate influence of sudden passion.

**Self-defense:** using deadly force against another person when reasonably believing the force is necessary to protect one's self or a third person against the other person's use of deadly force.

 The erroneously admitted statement suggests that appellant would or could kill under undefined circumstances. A jury can discern partial truths and falsities from any statement and any witness. While the State argues the evidence can only prove murder, i.e., appellant maintained an intent to kill without any provocation, the statement implies that appellant could kill under a range of circumstances. That is, the statement implies appellant could kill without regard to the actual circumstances surrounding her act.

The jury could accept the statement as evidence that appellant could form an intent to kill, and the jury could also add the circumstances of the broken glass, the proximity of the bodies, the thrown telephone, etc., and determine that adequate provocation existed for appellant to actualize her intent under the immediate influence of sudden passion, though she might have refrained from shooting the victim when not under the influence of sudden passion. The jury could have also determined from the same evidence of a fight that appellant reasonably believed that her life was threatened and find appellant acted in self-defense. We cannot conclude beyond a reasonable doubt that the erroneously admitted hearsay statement, suggesting appellant had some latent desire to kill the victim, did not prejudice the jury in determining a material issue in the case: whether appellant shot the victim in self-defense or merely acted upon a desire under the immediate influence of sudden passion. We cannot conclude that a hearsay statement of the victim's assessment of the probability that appellant could or was likely to shoot him was harmless. We find the error harmful and sustain appellant's fifth point of error.

Having found the evidence sufficient to support the jury's verdict, but having found harmful error in the admission of hearsay testimony, we need not address the remainder of appellant's points of error.

We REVERSE the judgment of the trial court and REMAND the case to the trial court for a new trial.

Opinions ordered published. Tex.R.App.P. 90.

Dissenting opinion by NYE, C.J.

DISSENTING OPINION
[MARCH 26, 1993]

NYE, Chief Justice, dissenting

I respectfully dissent on three grounds. With regard to appellant's insufficiency point, I do not think that this Court need reach the issue presented under *Lee* and *Bradley* because appellant's claim here is not the same as that addressed in those cases. Even if appellant's argument were the same, I would hold that appellant is estopped from challenging the evidentiary sufficiency since she failed to object to the charge given. Thirdly, I disagree with the majority's finding that the admission of

hearsay evidence constituted reversible error.

By her first point of error, appellant complains of insufficient evidence, stating:

[t]he evidence is legally insufficient to support the conviction in that there is no evidence from which a rational trier of fact could have concluded that appellant was acting under the influence of sudden passion based on adequate cause, *but have concluded beyond a reasonable doubt that she was not acting in self defense.* (emphasis added).

In addressing the first point, the majority analyzes *Lee* and *Bradley* and concludes that appellant may challenge the sufficiency of the evidence here because, although she did not object to the voluntary manslaughter charge, she did not request it either. The language appellant uses in her first point indicates that the *Lee* and *Bradley* decisions are not implicated by appellant's claim.

As the majority ably discusses, *Lee* and *Bradley* address the problem in which "sudden passion" arises in a murder prosecution, thus negating the "knowing and intentional" state of mind required for the State to prove murder. Then, the defendant on appeal will argue that sudden passion was not in fact proven. Appellant does not make that argument here. Instead she claims that the mental state described by the element of "sudden passion" is legally congruent to the mental state of "fear of death" in the self-defense instruction. She attacks the jury's ability to find that she acted with "sudden passion" when the jury did not find that she acted in self-defense.

In order to find appellant guilty of voluntary manslaughter rather than murder, the jury had to find that appellant caused Mark's death under the "immediate influence of sudden passion arising from an adequate cause." *See Bradley v. State,* 688 S.W.2d 847, 849 n. 1 (Tex.Crim.App. 1985); TEX.PENAL CODE ANN. § 19.04(a) (Vernon 1989). "Sudden passion" must be directly caused by and arise out of provocation by the deceased at the time of the offense. TEX.PENAL CODE ANN. § 19.04(b). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Bradley,* 688 S.W.2d at 849; TEX.PENAL CODE ANN. § 19.04(a).

Based on appellant's testimony, a fact issue existed on whether appellant acted under the "immediate influence of sudden passion arising from adequate cause." TEX.PENAL CODE ANN. § 19.04 (Vernon 1989). Thus, under *Lee* and *Bradley,* the trial court's instruction on voluntary manslaughter was proper. Appellant's testimony also raised the issue of self-defense. Pursuant to the court's charge, the jury would find that appellant acted in self-defense if it found that:

it reasonably appeared to [appellant] that her life or person were in danger and there was created in her mind a reasonable expectation or fear of death ... and [she] reasonably believed that the use of deadly force was immediately necessary to protect herself against [the] use or attempted use of unlawful deadly force.[1]

Appellant essentially argues that, under these facts, "sudden passion" and a "reasonable expectation or fear of death or serious bodily injury" are legally congruent. Appellant makes an interesting claim that, under the battered wife theory of self-defense, she cannot be convicted of voluntary manslaughter as a matter of law. I disagree.

Appellant testified that Mark had threatened her, had asked the whereabouts of the gun, and that she "knew it was either him or me." She also testified that Mark's attacks that night and in the past consisted of "grabbing," "pushing," and "pulling [her] hair." The jury may properly have concluded that appellant *did suffer from* battered wife syndrome, that she shot the victim in reaction to a sudden fear or passion aroused by the victim's behavior, but that she could not *reasonably* have believed that her use of *deadly* force was

---

1. *See* TEX.PENAL CODE ANN. §§ 9.31(a), 9.32 (Vernon 1974).

necessary in this instance. The jury's finding is consistent with the facts and the law applicable to this case. This court need not adopt the ruling it does on *Lee* and *Bradley*.

Even if *Lee* and *Bradley* did apply, I would hold that appellant waived any complaint by failing to object to the charge on voluntary manslaughter. Dicta in both opinions indicates that "failure to object to a charge on voluntary manslaughter on the ground that the evidence does not support it would signal acquiescence on the part of the accused in the trial court's judgment that sudden passion was raised." *Bradley v. State*, 688 S.W.2d at 853. Such failure to object to a voluntary manslaughter instruction "will estop the accused from complaining on appeal that the evidence failed to establish all the elements of that offense, namely, sudden passion." *Bradley*, 688 S.W.2d at 853. The Court of Criminal Appeals reaffirmed this dicta in *Lee* stating, "[b]y invoking the benefit of the lesser included offense charge at trial in not objecting to its submission to the jury ... appellant is estopped from complaining on appeal that the evidence failed to establish all elements of that lesser included offense." *State v. Lee*, 818 S.W.2d 778, 781 (Tex.Crim.App.1991).

In the present case, the issue of sudden passion was raised when appellant testified that her husband abused her that night and that she feared for her life when the shooting occurred. Under *Lee* and *Bradley*, in order to prove murder, the State was required to negate the "implied element" of sudden passion. This it failed to do. Appellant now challenges the sufficiency of the evidence on the jury's finding on voluntary manslaughter. Pursuant to *Bradley* and *Lee*, I would hold that by failing to object to the charge on voluntary manslaughter, appellant is estopped from challenging the element of sudden passion here.

I further disagree with the majority's ruling on the admission of hearsay evidence. By her fifth point, appellant complains that the trial court erroneously allowed a rebuttal witness to testify to hearsay statements the victim made regarding his marital problems and his fear of appellant. In the face of appellant's evidence of physical abuse from the victim, the trial court allowed rebuttal on the issue of Mark's qualities as a peaceful husband. The State called Mitch Sipiala, a friend of the victim's. He testified that he went drinking with Mark Vann two nights before the shooting. Over appellant's objection, Sipiala recounted that he and Mark talked about Mark's impending divorce. Mark was sad and depressed. He was not happy with his marriage, but appellant would not give him a divorce. The victim also stated, "I wouldn't be surprised if Cherie was waiting for me at home with a gun and shot me." The State argued that the statement showed Mark's existing mental state at the time, and the trial court allowed the evidence.

An exception to the hearsay rule exists if the statement at issue is:

> a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain or bodily health), *but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.* TEX.R.CRIM.EVID. 803(3) (emphasis added).

The State argues that the statement was *not* offered to prove that appellant was waiting at home with a gun to shoot the victim. Rather, it was offered merely to show that Mark was the victim in an oppressive marriage, that appellant was possessive, jealous, and vindictive, and Mark feared her. *See Whitmire v. State*, 789 S.W.2d 366, 371–72 (Tex.App.—Beaumont 1990, pet. ref'd). Earlier, appellant had testified that she and Mark were having marital problems, that he wanted a divorce, and that she had reached a point of personal acceptance in the matter if Mark did divorce her. The testimony in question shows the victim's mental feeling at the time he related his mood to Sipiala. The statement was not offered to prove that

appellant was, in fact, waiting at home with a gun to shoot the victim. Rather, it was offered *as a statement of the victim's emotions or mental feeling.* The victim did not expressly state, "I feel sad and depressed because my wife and I do not get along and she will not agree to a divorce." However, the statement shows that such was in fact the victim's state of mind. Appellant did not object to the relevancy of the statement.

The majority states that "the State did not ask how the witness knew the victim's mental condition, but attempted to go beyond the mental condition to uncover its cause." This reasoning is backwards and infers error simply because Mark's statement evidencing his state of mind is remarkable in light of *subsequent* events. *How* the witness knew the victim's mental condition is clear from his testimony—Mark discussed his personal problems with his friend. By the majority's reasoning, we must conclude that Mark was depressed *because he knew for a certainty* that his wife was waiting at home with a gun to shoot him and that she did, in fact, do so. This interpretation is contrary to the witness's express testimony, and one wonders why the victim went home that night and on the evening of the shooting.

In addition, if the admission of the statement was error, I am convinced beyond a reasonable doubt that it was not reversible error. While the majority concludes that Mark was depressed because appellant was waiting at home with a gun to shoot him, the jury did not so conclude. Had the jury

believed that the statement proved the fact asserted, it would have been logical for the jury to find the appellant guilty of intentionally murdering her husband. This the jury did not do. Instead, it found appellant guilty of voluntary manslaughter. It is not for us to second guess the able trial judge's ruling. I am further convinced beyond a reasonable doubt that this evidence did not cause the jury to forego self-defense as its verdict. The evidence of abuse that appellant presented throughout trial was that Mark "pushed" her, "grabbed her" or "pulled her hair." While this case raises serious and profoundly disturbing issues of domestic violence, which are appearing with shocking regularity in our society, I believe that the jury was not convinced that appellant could *reasonably* have believed that the use of *deadly* force was justified in this instance. *See Semaire v. State,* 612 S.W.2d 528, 530–31 (Tex.Crim. App.1980).

I would hold that because of Rule 803(3) the victim's statement was admissible as a statement of mental feeling. *Newton v. State,* No. 70770, 1992 WL 175742 (Tex. Crim.App. June 17, 1992) (not yet reported); *Whitmire,* 789 S.W.2d at 371–72. I would affirm the trial court's judgment.