**Harold WILKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–97–145–CR.**

Court of Appeals of Texas, Corpus Christi.

Dec. 17, 1998.

---

Thomas F. Greenwell, Attorney at Law, Corpus Christi, for Appellant.

Carlos Valdez, District Attorney, Corpus Christi, for the State.

Before Chief Justice SEERDEN and Justices HINOJOSA and YAÑEZ.

## OPINION

SEERDEN, Chief Justice.

Harold Wilks appeals his convictions for arson and the murder of his wife, Virginia Wilks, by setting her on fire. Wilks was tried by jury and sentenced to 45 years in prison for the murder and 20 years for the arson, plus $10,000 fines for each offense. Wilks raises two points on appeal complaining that the trial court erred in admitting

testimony about certain statements that Virginia made both before and after the fire.

At around 10:00 p.m. on December 16, 1995, neighbors noticed smoke coming from the Wilks' house and found Harold Wilks just outside the kitchen door of the house with a hose squirting water into the house. When sheriff's deputies and firefighters responded to the fire, they found Virginia still alive in the kitchen. As she was being rescued, Virginia said that Harold had poured gasoline on her and set her on fire. Once at the hospital, Virginia was alert for several hours, during which she again stated to several persons that Harold Wilks had set her on fire. Virginia died from her injuries in the early morning hours of December 17, 1995.

■ By his first point of error, Wilks complains that the trial court erred in allowing testimony concerning a statement that Virginia made before the fire to the effect that he would have to kill her before she signed a certain document. The trial court allowed such testimony as a statement of Virginia's then existing state of mind.

■ Texas Rule of Evidence 803(3) allows as an exception to the hearsay rule "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." *See Vann v. State,* 853 S.W.2d 243, 248–50 (Tex.App.—Corpus Christi 1993, pet. ref'd); *Norton v. State,* 771 S.W.2d 160, 165–66 (Tex.App.—Texarkana 1989, pet. ref'd)

In the present case, Richard Fitzgerald, Wilks' son-in-law and a stock broker, managed Harold and Virginia's Individual Retirement Accounts from his Oklahoma office. When Harold wanted to change the beneficiaries on his account from Virginia to his children, Fitzgerald spoke to Virginia several days before the fire about her consent to that change, which was supposedly required under Oklahoma law. Over Wilks' hearsay objection, the trial court allowed Fitzgerald to testify that, in response to his contention that

she was required to sign the beneficiary form to consent to being replaced as a beneficiary, Virginia stated, "[w]ell, he'll have to kill me first, I'm not signing it." However, the trial court gave a limiting instruction to the jury that the statement was not being offered to prove the truth of the matters asserted therein, but rather to show the deceased's state of mind at that particular moment.

■ Wilks concedes on appeal that testimony about Virginia's intent not to sign the consent form may be admissible. Statements of intent by the declarant to prove future conduct are generally admissible when that future conduct is relevant to some aspect of the case. *See Vann,* 853 S.W.2d at 248–50 (victim's statement that he was not happy in his marriage and wanted to find a way out was admissible as a statement of emotional state and intent to act); *Norton,* 771 S.W.2d at 165–66 (murder victim's statement to his wife that he intended to go to defendant's shop was admissible under state of mind exception to hearsay rule for limited purpose to show that victim intended to go to shop to help defendant and to rebut self-defense claim). In the present case, the State used Virginia's intent not to sign consent to change the beneficiary on the IRA to show that she refused to sign and that Harold killed her in order to eliminate the necessity for her consent.

■ However, Wilks argues that Virginia's further statement that Harold would "have to kill me first" was improperly admitted to show Harold's subsequent conduct. In other words, Wilks separates the statement indicating Virginia's intent not to sign the consent form from her statement allegedly implying that Harold would kill her if she did not sign. When the declarant's statement suggests an intent or future conduct by someone else, it goes beyond the state of mind exception of Rule 803(3) and should not be admitted. *Vann,* 853 S.W.2d at 250 (trial court erred in admitting statement by murder victim that "I wouldn't be surprised if [defendant] was waiting for me at home with a gun and shot me").

However, even if the point were preserved, we conclude that the addition of the state-

ment that "he'll *have to* kill me first" to Virginia's intent not to sign does not directly state anything about Harold's intent to kill her, but does directly show the strength of Virginia's intent not to sign even *if* threatened with death. The declarant may have a greater or lesser intent to take any certain action. Virginia's intent not to sign was expressed not merely as a casual "I'm not signing it," but as an emphatic "he'll have to kill me first." We conclude that, under the Rule 803(3) exception, indication of the strength of the declarant's intent, as much as the underlying intent itself, is admissible. Accordingly, the present testimony was admissible to show her then existing state of mind in the present case. We overrule Wilks' first point of error.

By his second point of error, Wilks complains that the trial court erred in allowing testimony concerning another statement that Virginia made to a witness at the hospital that "I always figured he would kill me, but I figured he would use a gun." The trial court allowed such testimony as a dying declaration, but Wilks objected that it did not fit within the dying declaration exception to the hearsay rule and that its prejudicial potential outweighed its probative value.

Texas Rule of Evidence 804(b)(2) allows as an exception to the hearsay rule, if the declarant is unavailable, "[a] statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death." Wilks argues that the present statement says nothing about the circumstances of Virginia's death, but does improperly suggest that there must have been an abusive relationship in the past that caused Virginia to think that Harold would kill her.

Had Virginia related her fears to someone else before the fire, it would not have been admissible to show that Harold acted in conformity with those fears. *See Vann v. State,* 853 S.W.2d at 250.

However, taken in the context of Virginia's injuries and her impending death, her statement clearly implied that Harold did in fact kill her as she had earlier suspected that he would. Accordingly, Virginia's statement concerned the cause of her death and was properly admissible as a dying declaration to yet another witness that Harold killed her.

With regard to Wilks' argument that the evidence was unduly prejudicial, we conclude that the trial court did not err in admitting it. A trial court may exclude relevant and otherwise admissible evidence only if the danger of unfair prejudice outweighs its probative value. TEX.R. EVID. 403. If the opponent makes the Rule 403 objection, the trial judge must weigh the probativeness of the evidence to see if it is substantially outweighed by its potential for unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. *Santellan v. State,* 939 S.W.2d 155, 169 (Tex.Crim.App.1997); *Suarez v. State,* 901 S.W.2d 712, 720–21 (Tex. App.—Corpus Christi 1995, pet. ref'd). However, in keeping with the presumption of admissibility of relevant evidence, there is a presumption that relevant evidence is more probative than prejudicial. *Santellan,* 939 S.W.2d at 169; *Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Crim.App.1990).

An appellate court reviews the trial court's ruling whether to exclude evidence under Rule 403 by an abuse of discretion standard. *Santellan,* 939 S.W.2d at 169; *Montgomery,* 810 S.W.2d at 391; *Suarez,* 901 S.W.2d at 720–21. The trial court's determination as to admissibility under Rule 403 must be reasonable in view of all relevant facts. *Rachal v. State,* 917 S.W.2d 799, 808 (Tex.Crim.App.1996); *Montgomery,* 810 S.W.2d at 392.

In the present case, Virginia had already declared to several witnesses that Harold killed her, and the value of an additional, indirect inference to that effect as related by another witness was minimal.

Faced with evidence that had little probative value, but also only slight potential for prejudice, we conclude that the trial court acted within its discretion in allowing testimony concerning Virginia's dying declaration. We overrule Wilks' second point of error.

We AFFIRM the judgment of the trial court.

We AFFIRM the judgment of the trial court.