COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

WILLIAM HETH BRAZIEL,                                )

                                                                              )              
No.  08-02-00116-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
238th District Court

THE STATE OF TEXAS,                                     )

                                                                              )          
of Midland County, Texas

Appellee.                           )

                                                                              )                
(TC# CR-26,882)

                                                                              )

 

 

O
P I N I O N

 

Appellant, William
Heth Braziel, appeals from his conviction for murder.  Upon the jury=s
finding of guilt, the jury assessed punishment of 60 years= imprisonment.  Appellant brings six issues on appeal:  two issues complain of jury charge error; two
issues raise ineffective counsel claims; and two issues claim that the trial
court erred by one, denying the admission of testimony, and two, admitting
autopsy photographs of the decedent.  We
affirm.

On Memorial Day,
May 28, 2001, the body of Arthur B. Guess, Jr. was found by a dumpster close to
4513 Robin Lane, Midland County, Texas. 
Mr. Guess had been shot twice, once in the back of his head and once in
the side of the neck.








At trial, Jason
Stratton, a welder living in Midland, testified that on May 28, 2001, he was
installing an irrigation system at his brother=s
landlord=s house
when he heard a pop[1].  He turned around and saw an older model
Cadillac, tannish in color, veering off the road.  He estimated that he was about sixty to
one-hundred yards from where the car came to a stop on the side of the
road.  Mr. Stratton testified that just
before the car came to a stop, he saw the driver=s
head fall towards the passenger side.  He
could not tell how old the driver was, but he could tell that it was a black
man.  Then, he saw a young black man of
medium build, about six feet tall wearing black baggy pants, a black or gray jersey,
and a blue bandana get out on the passenger side of the car.  He testified that he saw the man open the
driver=s side of
the car, reach in, and begin shoving and pushing.  It appeared as if he was pulling something
from the driver=s side of
the vehicle and pushing it to the passenger=s
side.  He saw the man go through these
motions two to four times.  It seemed to
Mr. Stratton that the man was nervous. 
Finally, he saw the vehicle head southbound.  Mr. Stratton further testified that he only
saw one person get out of the vehicle and that he did not know whether there
were other individuals in the car.  

About fifteen
minutes later, Mr. Stratton testified that he saw police in this same area
diverting traffic.  As he approached this
area, he was told that someone had been shot and thrown in the dumpster, so he
told the police that he had seen a vehicle. 









Connie Guss, also
witnessed the events described in Mr. Stratton=s
testimony.  Ms. Guss testified that on
the day in question, she was standing in her front yard watering her
flowers.  She had her back to the street,
when she heard the dumpster lid slam open. 
She turned around and saw an older model Cadillac, either gold or
silver, near the dumpster.  She went
inside her house and observed from her window. 
She testified that she saw a person outside the vehicle pulling and
tugging at what appeared to be something really heavy out of the car.  It appeared to Ms. Guss that the person
was struggling with it and having a hard time getting it out.  Whatever it was he was pulling was placed
next to the dumpster.  She further
testified that she could not tell if anyone else was in the vehicle because the
windows were either tinted or dirty.  She
was unable to identify the man that she saw outside of the vehicle.  She testified that she saw the person get
back into the passenger=s
side and then drive off and that the time between those two events was
practically none; it all happened immediately. 
She assumed that there was another person driving the vehicle, but she
testified that she only saw one person.  

Ms. Guss then
drove by the dumpster and discovered a black man wearing long sleeves, boots,
and jeans laying on the ground.  She
noticed the man was not moving and went back to her house and called the
police.  

During the trial,
Appellant testified on his own behalf. 
Appellant testified that on the day in question, Mr. Guess was giving
him, Jason Spraglin, and Herman Braziel a ride. 
Appellant testified that he already had a gun with him when Mr. Guess
picked him up.  According to his
testimony, the person who shot Mr. Guess was his cousin, Herman Braziel.  At first, in a statement Appellant provided
to the police, he stated that Jason Spraglin had shot Mr. Guess.   However, at trial, Appellant testified that
he had lied on his statement for fear that Herman Braziel would hurt him and/or
his family.








Herman Braziel
also testified at the trial and refuted Appellant=s
testimony.  Herman Braziel testified that
on the day in question, he was at the local pool swimming with his girlfriend=s children.  He estimated that he left the pool around
three o=clock in
the afternoon.  Later that evening,
Appellant approached him and told him that he had killed Mr. Guess.  According to Herman Braziel=s testimony, Appellant and Mr. Guess
had a fight over the sale of Mr. Guess=s
car to the Appellant which escalated and ended with Appellant shooting Mr.
Guess.  

After hearing all
of the evidence, the jury found Appellant guilty of murder and assessed a
sentence of sixty years, confinement.  Appellant
filed a motion for new trial that was denied. 
Appellant now brings this appeal.

DISCUSSION

In Issues One and
Two, Appellant argues jury charge error. 
In Issue One, Appellant contends that the trial court erred in refusing
to include a charge on presumption of innocence in its guilt/innocence
instruction to the jury.  In Issue Two,
Appellant contends that the trial court erred in refusing to include a charge
on the State=s burden
of proof in its guilt/innocence instruction to the jury.  The Appellant discusses both of these points
together in his brief, and we will also address them jointly.

Standard
of Review

When an appellant
alleges jury charge error on appeal, our first task is to determine whether
error actually exists in the charge.  Hutch. v. State, 922 S.W.2d 166, 170
(Tex.Crim.App. 1996); Almanza v. State, 686 S.W.2d 157, 171
(Tex.Crim.App. 1985)(Opin. on reh=g).  If there is jury charge error, we then must
determine if the error caused sufficient harm to warrant reversal.  Hutch, 922 S.W.2d at 170‑71; Almanza,
686 S.W.2d at 171.  Where the defendant
timely objected at trial to the jury charge, as in this case, we must reverse
if the error is not harmless.  Hutch,
922 S.W.2d at 171; Almanza, 686 S.W.2d at 171.








There is no
constitutional requirement that the trial court give an instruction on the
presumption of innocence in every criminal trial.  Kentucky v. Whorton, 441 U.S. 786, 99
S.Ct. 2088, 60 L.Ed.2d 640 (1979). 
Failure to give an instruction on the presumption of innocence Amust be evaluated in light of the
totality of the circumstances -- including all the instructions to the jury,
the arguments of counsel, whether the weight of the evidence was overwhelming,
and other relevant factors -- to determine whether the defendant received a
constitutionally fair trial.@  Id. at 789, 99 S.Ct. 2090.

Although it is
proper to instruct the jury that the law places the burden of proof on the
State, it is not reversible error to omit this specific instruction from the
charge when the charge, read as a whole, adequately informs the jury on the
issue of burden of proof.  Humphries
v. State, 163 Tex.Crim. 601, 295 S.W.2d 218, 220 (1956); Simpson v.
State, 709 S.W.2d 797, 799 (Tex.App.‑‑Fort Worth 1986, pet. ref=d).

In this case,
looking at the totality of the circumstances, we find no error on the part of
the trial court in refusing to give the requested instruction on presumption of
innocence and burden of proof.  The jury
charge did not contain a specific instruction as to the presumption of
innocence or burden of proof, but it did contain instructions that the jury
could only find the Appellant guilty if they believe the evidence beyond a
reasonable doubt[2].  The jury charge also contained the following
language:

[I]f you do not believe the defendant
is guilty of MURDER, either as a principal or as a party, or it you have a
reasonable doubt thereof, you will acquit the defendant of the offense of
MURDER, and say by your verdict >Not
Guilty= to the
offense of MURDER.

 








Additionally, the jury charge
instructed the jury that they were not to refer to or discuss any matter or
issue not in evidence before them and that in making their decision, they
should not take into account the punishment that may be assessed against the
Appellant is he was found guilty beyond a reasonable doubt.  Lastly, the jury charge contained an
instruction that only the evidence presented to them through a witness can be
taken into account.  

During closing
arguments, the State told the jury that it had the burden of proving the
elements of the offense.  The State
stated:

Let me remind you what
we talked to about -- or what I talked to you about on voir dire, and that is
the State -- we have to prove everything that was in the indictment . . . .

 

Appellant=s
attorney also told the jury about the burden of proof resting with the
State.  Appellant=s
counsel stated the following:  

We talked about things such as >innocent until proven guilty.= 
Mr. Braziel, as we sit here today, is an innocent man.  We talked about the burden of proof that is
on the State of Texas.  Mr. Braziel has
no burden; the State has all of the burden.

 








The overwhelming
weight of the evidence was such that the jury could have found the Appellant
guilty of the murder.  There was the
testimony of Mr. Stratton and Ms. Guss. 
There was the Appellant=s
own testimony in which he testified that he was in the vehicle when
Mr. Guess was shot.  He also
testified that his cousin, Herman Braziel was the person that shot Mr. Guess,
but that he told police it was Jason Spraglin the first time because he was
afraid of what Herman Braziel would do to him and his family.  Then we have the conflicting testimony of Mr.
Herman Braziel in which he testified that Appellant had told him he that he had
shot Mr. Guess.  Finally, there was
testimony that the fingerprints on the vehicle=s
driver=s door
and the steering wheel cover matched the Appellant=s
fingerprints.  In light of the
conflicting evidence, we still believe that the jury could have found that the
overwhelming weight of the evidence showed Appellant was guilty of the murder.

During voir dire,
the State told the panel that the defendant did not have the burden to shown
his innocence.  It also told the jury
that the State had the burden of proof and that it needed to prove everything
beyond a reasonable doubt.  Appellant=s counsel told the venire panel on voir
dire that Appellant was innocent until proven guilty.  He also told them that the burden of proof
was on the State.  After voir dire, the
trial court told the jury that the Appellant did not have the burden of proof
and that the burden rested with the State. 
Accordingly, we overrule Appellant=s
Issues One and Two.

Ineffective
Assistance of Counsel

In Issues Three
and Four, Appellant contends that he received ineffective assistance of counsel
when his trial attorney failed to make specific objection to the failure of the
court to place in its guilt/innocence instruction on one, Appellant=s presumption of innocence, and two, on
the State=s burden
of proof.  Appellant contends that the
error was not in failing to make the request, but in failing to request the
instructions in such a manner that the trial court would clearly understand
what part of the Geesa[3]
instruction it was requesting.  In so
doing, Appellant contends that his counsel failed to preserve error and as
such, subjected the Appellant to a showing on appeal of egregious harm rather
than merely showing some harm.

In light of our
decision overruling Issues One and Two, we find Appellant=s counsel did in fact request for the
jury charge to include an instruction on presumption of innocence and the State=s burden of proof.  At trial, the following exchange occurred:








The
Court:                    Any comments or
questions or objections or requested modifications to that charge?

 

Mr.
Heidelberg:            None by the State,
Your Honor.

 

Defense
Counsel:          The Defense would
request, pursuant to Geisa[4]
versus State 820 SW 2nd 154, the specific charge on burden of proof,
presumption of innocence and reasonable doubt, which I am handing to the Court
now -- it says 23:32, and it shows the form. 
We would request that be included.

 

The
Court:                    Okay.  Any comments or questions by the State
regarding that requested language?

 

Mr.
Schorre:                 On the reasonable
doubt?

 

The
Court:                    On Geisa

 

Mr.
Schorre:                 Judge, that has
been overruled.  In fact, the Court ruled
that it would be error to submit that definition, and we would object to that
being included in the Court=s
charge.

 

The
Court:                    The Court will
deny the requested instruction as submitted by Counsel for Mr. Braziel
pertaining to the language in Geisa.

There is part of it
that the Court will allow you to argue, Mr. Robnett, pertaining to the
presumption of innocence or the burden of proof, but the Court will not allow
you to give to the jury the definition of reasonable doubt as it was originally
set for in Geisa.

 

Although the discussion around
Appellant=s request
for these relevant instruction also involved the issue of reasonable doubt, we
find that the request nevertheless clearly informed the trial court of
Appellant=s
request.  As such, we overrule Appellant=s Issues Three and Four. 

Admission
of Evidence








In Issue Five,
Appellant argues that the trial court erroneously denied the admission of
testimony that Appellant contends was admissible under Tex.R.Evid. 803(3).  In
Issue Six, Appellant argues that the trial court erred in allowing the State to
introduce gruesome autopsy photographs of the decedent, Mr. Guess.  

In determining
whether a trial court erred in admitting evidence, an appellate court applies
an abuse of discretion standard of review.  Mozon v. State, 991 S.W.2d 841, 846‑47
(Tex.Crim.App. 1999); Green v. State, 934 S.W.2d 92, 101‑02
(Tex.Crim.App. 1996).  A trial court is
found to have abused its discretion when its decision is so clearly wrong as to
lie outside that zone within which reasonable persons might disagree.  Montgomery v. State, 810 S.W.2d 372,
391 (Tex.Crim.App. 1991)(Opin. on reh=g);
Foster v. State, 909 S.W.2d 86, 88 (Tex.App.--Houston [14th Dist.] 1995,
pet. ref=d).  Absent such a finding, a trial court=s ruling on the admission of evidence
will not be reversed.  Green, 934
S.W.2d at 101‑02.

Appellant=s Issue Five revolves around his
attempt to introduce Debra Tatum=s
testimony that Mr. Guess had said to her: 
Aif
anything should happen to him, he showed me a couple of guys that had beat him
up two weeks prior.@  The two individuals that Mr. Guess had
pointed out were Herman Braziel and Jason Spraglin.  Appellant contends that this testimony
indicated Mr. Guess=s
emotion and mental feelings right before his death and as such is admissible
under Tex.R.Evid. 803(3).  The State contends that this testimony was
inadmissible because it was hearsay and that Mr. Guess=s
state of mind was not a contested issue in this case.  Tex.R.Evid.
803(3) states:








(3) Then Existing Mental, Emotional,
or Physical Condition.  A statement
of the declarant=s then
existing state of mind, emotion, sensation, or physical condition (such as
intent, plan, motive, design, mental feeling, pain, or bodily health), but not
including a statement of memory or belief to prove the fact remembered or
believed unless it relates to the execution, revocation, identification, or
terms of declarant=s will.

 

We find that in this case, Rule
803(3) is not applicable to the testimony. 
The statement made by Mr. Guess falls into the realm of his belief and
therefore is not an exception to the hearsay rule.  See Dorsey v. State, 24 S.W.3d 921,
928 (Tex.App.--Beaumont 2000, no pet. h.), citing Vann v. State, 853
S.W.2d 243, 250 (Tex.App.--Corpus Christi 1993, pet. ref=d)(Deceased=s statement that he Awouldn=t
be surprised if Cherie was waiting for me at home with a gun and shot me@ was not admissible under Rule 803(3),
because it went beyond his state of mind and entered the realm of his belief.);
see also Barnum v. State, 7 S.W.3d 782 (Tex.App.‑-Amarillo 1999,
pet. ref=d)
(Deceased=s
statement that she believed her husband might be planning to murder her for
life insurance proceeds was a statement of belief and not admissible under Rule
803(3)).








We disagree with
Appellant=s
argument that the above cited cases are not relevant because in this case, Mr.
Guess=s
testimony did not enter the realm of belief as the statements in both Dorsey
and Vann, but was rather more like the statement made in Whitmire v.
State[5].  In Whitmire, the Court allowed the
decedent=s ex-wife
to testify that the decedent had told her that Ahe
had gotten himself into a predicament that he couldn=t
get out of.@  Id. at 371.  We find that the facts in that case differ
from the case at hand.  In Whitmire,
the statement was used by the State to rebut previous testimony Aelicited by appellant from another
witness that the victim had threatened to kill appellant if she attempted to
leave him.@  Id. 
In that case, the statement was used to show the victim=s state of mind with regard to previous
testimony that Aalleged
that the victim would kill appellant if she left him.@  Id. 
The issue of the decedent=s
state of mind was clearly raised in that case, whereas in this case, the
decedent=s state
of mind was not at issue.  We therefore
overrule Issue Five.

In Issue Six, the
Appellant complains that the trial court erred in allowing gruesome autopsy
photographs of the decedent.  At trial,
Appellant objected that the photos were gruesome and that their probative value
was outweighed by their inflammatory and prejudicial nature.  The specific photographs objected to during
trial were State Exhibits 13 through 17. 
The first photograph, State=s
Exhibit No. 13, depicted the decedent fully clothed and it was taken at the
morgue.  The second photograph, State=s Exhibit No. 14, showed decedent=s lower part of his body, still fully
clothed.  The third photograph, State=s Exhibit No. 15, depicted decedent=s body after it had been cleaned;
decedent was naked and laying face down. 
The photograph showed a visible head wound.  The fourth photograph, State=s Exhibit No. 16, showed the right side
of the decedent=s neck
and also displayed a visible wound.  The
last photograph objected to, State=s
Exhibit No. 17, showed the decedent=s
right side of his neck and face and also displayed the same visible wound as
State=s Exhibit
No. 16.








The admissibility
of photographs over a challenge is within the sound discretion of the trial
judge.  Sonnier v. State, 913
S.W.2d 511, 518 (Tex.Crim.App. 1995).  Tex.R.Evid. 403 requires an admissible
photograph to have some probative value which must not be substantially
overweighted by its inflammatory nature. 
Rojas v. State, 986 S.W.2d 241, 249 (Tex.Crim.App. 1998), quoting
Long v. State, 823 S.W.2d 259, 272 (Tex.Crim.App. 1991), cert. denied,
505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992).  In making this determination, relevant
factors to consider include:  the number
of exhibits offered; their gruesomeness; their detail; their size; whether they
are black and white or color; whether they are close‑up shots; whether
the body is naked or clothed; the availability of other means of proof; and
other circumstances unique to the individual case.  Rojas, 986 S.W.2d at 249.  Moreover, autopsy photographs are generally
admissible unless they depict mutilation of the victim caused by the autopsy
itself.  Id.

In this case, the
photographs were used along with Dr. Rodney Tucay=s,
the forensic pathologist who performed that autopsy of Mr. Guess=s body, testimony regarding his
findings and directly related to the cause of death.  The photographs themselves are not
particularly offensive, nor are they portrayed in any manner more gruesome than
that of the injuries inflicted.  See
Narvaiz v. State, 840 S.W.2d 415, 429-30 (Tex.Crim.App. 1992), cert.
denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993), quoting
Long, 823 S.W.2d at 273.  None of the
photographs show any injury resulting from autopsy procedures done to the body
of the decedent.  After a full review of
the photographs, we find the probative value outweighed any danger of unfair
prejudice.  We find that the trial court
did not abuse its discretion in admitting the photographs.  We overrule Issue Six.

We affirm the
trial court=s
judgment.

 

 

July
8, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Mr. Stratton testified that the Apop@ he heard sounded like a car pop, and
that it possibly could have been a gun shot.





[2]
There were three instances where the words Aif
you believe from the evidence beyond a reasonable doubt@
were included in the jury charge.  





[3]
Geesa v. State, 820 S.W.2d 154, 162 (Tex.Crim.App. 1991).





[4]
The case name was misspelled in the record, but there is no dispute that the
attorneys and the trial judge were all referring to Geesa v. State, 820
S.W.2d 154 (Tex.Crim.App. 1991).





[5]
789 S.W.2d 366, 371 (Tex.App.--Beaumont 1990, pet. ref=d).