

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-75,582

**JOHN STEVEN GARDNER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON DIRECT APPEAL
### FROM CAUSE NO. 219-81121-06 IN THE 219TH DISTRICT COURT
### COLLIN COUNTY

**KELLER, P.J., filed a concurring opinion in which MEYERS, J., joined.**

A statement is a dying declaration if it is "made by a declarant while believing that his death

is imminent, concerning the cause or circumstances of what he believed to be his impending death."[1]

I find absolutely no evidence in this case that Tammy Gardner believed that her death was imminent

when she identified appellant as her attacker.

As the Court acknowledges, the rule requires sufficient evidence to show that the declarant

---

[1] TEX. R. EVID. 804(b)(2).

must have realized that he was at death's door at the time he spoke. The Court relies primarily on Tammy's injury to establish that she knew she was about to die. Let us review the evidence.

*1. The Evidence*

**(1) The single bullet entered her right temple, went through her brain, and exited below her left ear. This was a mortal wound.** The question, though, is whether Tammy knew that it was a mortal wound. The fact that she had been shot in the head and her injury ended up killing her does not demonstrate that she knew she was at death's door at the time that she made the statement in question. While the nature of wounds can, in some cases, support a conclusion that a declarant knows she is dying, the facts in the cases cited by the Court are not comparable to the facts of this case. In those cases there was evidence that: the doctor told the victim she was going to die;[2] the victim was set on fire and died the next morning;[3] or the victim refused to identify his attacker until an officer asked him, "If you die do you want the person who did this to you to go free?"[4] First, these are court of appeals opinions rather than opinions from our Court. Moreover, the objection in *Wilks* was not that the victim was unaware of her impending death but that the statement did not concern the circumstances of her death. And in my opinion the holding in that no-petition case is questionable anyway.

**(2) Ms. Whitfield testified that Tammy's voice was very slurred and hard to understand.** This is not particularly strong evidence of the extent of the injury, and it is no evidence

[2] *Magee v. State*, 994 S.W.2d 878, 887 (Tex. App. – Waco 1999, pet. ref'd).

[3] *Wilks v. State*, 983 S.W.2d 863, 866 (Tex. App. – Corpus Christi 1998, no pet.)

[4] *Scott v. State*, 894 S.W.2d 810, 811-12 (Tex. App. – Tyler 1994, pet. ref'd).

that Tammy was aware of her impending death. More to the point, the substance of what Tammy said to Ms. Whitfield reveals no awareness of impending death.

**(3) Tammy kept repeating that her head hurt and that she could not hear very well "because her ears were ringing from the gunshots."** Contrary to the conclusion of the Court, I believe this shows–if anything–that she was unaware of the severity of her injuries. I think that these matters would seem insignificant to her if she were really aware of the fact that she was going to die. In any event, they are no evidence of the latter.

**(4) She said that her husband had shot her, there was blood everywhere, and she needed an ambulance.** Asking for medical assistance is evidence that she *didn't* know she was dying.

**(5) Before the phone disconnected, Ms. Whitfield heard what sounded like Tammy choking and vomiting.** Tammy knew she was injured, but this offers no support for the contention that she knew she was dying. Moreover, the identification of appellant had already been made by then.

**(6) When the first deputy arrived, he found Tammy on the blood-soaked bed, trying to sit up; she appeared to be in shock and was bleeding badly from both the back and top right of her head.** This was twenty or thirty minutes after she called 911. The responding officer testified that Tammy was trying to sit up and wanted to get out of bed. He had to tell her repeatedly that she was bleeding badly and that she needed to lay back down. This is evidence that she did not know how severely she was injured. Also, even if she was aware at that time of the extent of her injuries, that would not be particularly relevant to what she thought when she identified appellant earlier on.

**(7) There was a trail of blood leading into the bathroom, around the toilet, and in the trash can.** This shows that she was able to go back and forth to the bed. And it appears that Tammy put the bloody tissues into the trash, as anyone would normally do if she were simply cleaning up an injury rather than contemplating her death.

**(8) When the paramedics finally arrived, Tammy was "spitting up a lot of blood" and mumbling incomprehensibly.** But the paramedic didn't see Tammy until almost forty-five minutes after the 911 call, well after Tammy made the statement accusing appellant. Also, even forty-five minutes after she called 911, she "seemed to be very stable."

**(9) She was in a vegetative state and died at the hospital two days later.** The fact that an injury is bad enough to eventually cause death cannot be sufficient to satisfy the dying-declaration requirements, or else the fact of death would swallow the consciousness-of-death requirement. And the fact that Tammy did not immediately die weighs against a conclusion that she knew she was dying. Finally, for all I can tell, had the ambulance not been delayed by going to the wrong house, Tammy might have survived her injuries. To whatever extent that is the case, it undercuts the Court's reliance upon the severity of her injuries to find that her statement was a dying declaration.

*2. The Standard of Review*

The Court says that the trial judge has "great discretion in deciding whether a statement qualifies as a dying declaration." The cases cited do not support this contention. The first case cited for the proposition is *Montgomery v. State*,[5] but the entire discussion in *Montgomery* is about Rule 403. Moreover, the reason given in *Montgomery* for deferring to the trial court on Rule 403

---

[5] 810 S.W.2d 372, 378-9 (Tex. Crim. App. 1990).

decisions is that "The trial judge sees the witnesses, the defendant, the jurors and counsel; he alone is able to witness the participants' mannerism and reactions."[6] But intonation and credibility are not issues when it comes to deciding whether a statement is a dying declaration. The dying declaration, however it is placed into evidence, does not reveal anything more to the trial court about the subjective belief of the declarant than it does to the appellate court.

The second case cited, *Coffin v. State*,[7] refers to Rule 804(b)(1), which concerns not dying declarations, but the use of former testimony. The remaining cases are the court of appeals opinions that I discussed above, and they do not appear to support the Court's claim.[8]

### 3. Excited Utterance

I would resolve appellant's claim on a different basis: The 911 call qualified as a nontestimonial excited utterance. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[9] There can be no doubt that Tammy's statements during the 911 call were excited utterances. She had just been shot in the head, and she was relating to the 911 operator the events that led to the injury. In *Davis v. Washington*, the Supreme Court pointed out that "[a] 911 call . . . and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establish or prove' some past fact, but to describe current circumstances

---

[6] *Id*. at 379.

[7] 885 S.W.2d 140, 149 (Tex. Crim. App. 1994).

[8] *See* this opinion, *ante*.

[9] T ex. R. Evid. 803(2).

requiring police assistance."[10]  I would hold that the 911 call constituted an "excited utterance" that was nontestimonial, and was admissible as a hearsay exception and under the Confrontation Clause.

I concur in the Court's judgment.

Date Filed: October 21, 2009
PUBLISH

---

[10]  547 U.S. 813, 827 (2006).